Good morning. May it please the court, my name is Soren Rotman, and I represent the petitioner, Socorro Ramos. I would like to reserve one minute of my time for rebuttal. The Immigration Act mandates that in proceedings before an immigration judge, a complete record shall be kept of all the testimony and evidence produced at the proceeding. Under the regulations, the hearing shall be recorded verbatim, except for statements made off the record with permission of the immigration judge. Neither the statute nor the regulations provide that an immigration judge may summarize or substitute her own words or her own notes from a hearing in lieu of the proffered testimony of the verbatim record. Is there a dispute as to whether this was actually taped in the first instance? According to the immigration judge's decision, the tape was simply missing. And although a respondent in his brief notes that the recording, that the first part of the hearing was simply not recorded. So to respondent, it really makes no practical difference what occurred, and indeed, it remains a mystery. Well, OK, because if there was a deliberate decision not to tape, that would be one thing. If there was an effort, we're supposedly taping what's going on here. So if it didn't come out, it wouldn't because we were deliberately flaunting the statute. It was because the high tech equipment wasn't working. And IJs don't have even high tech equipment, I understand. So does that make a difference from your analysis as to whether or not it was inadvertent error as opposed to deliberate non-taping? No, it doesn't make a difference. Petitioner is not alleging malfeasance by the immigration judge, but simply asserting her statutory right to have this verbatim record. And the reason this record is so important is that the Board of Immigration Appeals has de novo review on the findings of the immigration judge in terms of the discretionary decision as to whether to grant relief. So the board could have found something in the testimony of Ms. Ramos or in the testimony of the expert witnesses that would have changed the outcome of this hearing. And instead, it was limited to reading only the notes or the summary which the immigration judge provided in her decision. Why did we make Ramos' counsel's agreement that the IJ's notes of testimony about the missing tape were accurate? Well, this agreement was certainly, the problem with this was that that conference itself was not recorded. So there's no record as to what was represented by the immigration judge to the parties when she read from her notes and created this record. You know, when I worked for the phone company, I was trained to take notes of every conversation that I had that was important. And I imported that into my legal practice so that when I'm having a conversation, because it's illegal in California to tape conversations. So if I'm having a conversation with opposing counsel or a judge, I normally take notes at least enough to reconstruct after the fact and maybe even dictate a contemporaneous memo. So the thing that bothers me in this case, that there's no proffer by the petitioner as to what either was erroneously said or omitted in that conversation. There's no proffer. It's all just saying, in effect. And maybe if that's your position, I know the Second Circuit seems to lean, perhaps, in this direction, that regardless if it's of an inadvertent error, if you go through a whole proceeding, at the end of the day you find out it's not been taped. The proceedings annul it. You have to start from scratch. Even though counsel was immediately made aware of the problem, there was this conference. And if there are no notes, nothing to suggest that there was anything specific that was omitted, that's the problem I have here. Well, petitioner alleges that because this is a violation of the statute and the regulations, she doesn't have to show prejudice. And indeed, she doesn't have to point to anything in particular that was left out. And for that, I would cite the Coleman decision. But the fact that counsel acquiesced to the immigration judge's telephone call was later undermined. Because when an appeal was filed with the board and the transcript was received, it was then noticed that there was additional testimony that was missing, that even the immigration judge hadn't realized was missing at the time of that telephonic conference. So it's simply a matter of the board not having for review all of the testimony of the respondent and the witnesses. This is not unique to the board. We have cases, even criminal cases here, where tapes disappear because of recording problems or the person who's recording disappears. And in those cases, the lawyers go back and reconstruct the record. If they do so and both sides agree, we accept that record here on appeal and any place it goes further. Why isn't the same process available here? That is, there's really no prejudice so long as it's been reconstructed. And both attorneys representing their individual clients agree that that is a solid record. Well, as I noted, even after both parties agreed, it was subsequently discovered. That's your argument, right? Right. But why at that point can't the administrative judge say, OK, we agree with the record, and not wait until it's up with the Court of Appeals and go back and say, we have to start over? The IJ could have started over the next day, chose to go this way. Here, in this case, it should have been the board that made that decision. When petitioner raised all these issues on appeal, the board should have realized that the record was incomplete and could have remanded for a new hearing or for a more full reconstruction of the record. Did the attorney withdraw the commitment, stipulation that the attorney made that that is an accurate transcription? No, I was the counsel throughout the proceedings, and no withdrawals were made. So at no point did the attorney for the petitioner withdraw the commitment that this is an accurate record. Well, on appeal to the board, all of these things were pointed out. And yet the board didn't even address any of these statutory, regulatory, or due process arguments. I think my question was just very narrow. At no time does either attorney withdraw on their stipulation that this was an accurate record. Well, to be frank, there was no technical stipulation, and there's no recording of such a stipulation either. There's an agreement. It's over the telephone with the judge, whether it's a stipulation or commitment or whatever. There's certainly an agreement that this is a valid record. At any time, did either attorney withdraw whatever they said about the record? No. But petitioner did present to the board that it was later discovered that indeed after that conference, more information was discovered that was missing. And petitioner did not acquiesce in that that made the record somehow complete. Another part, not just the missing testimony, the reason this is so important is that petitioner's other argument is that the immigration judge improperly curtailed the questioning of the expert witnesses. And so that colloquy, which occurred at the beginning of the hearing, is also missing from the transcript and was not summarized by the immigration judge in her decision. Well, if that was the case, if that was the case, this conversation happened how soon after the hearing? Two days. Two days. So if in her summary over the phone, from your perspective, being on the phone, she omitted any of that, did you make any note or contemporaneous memorandum to record it while it was fresh in your mind so that in the event her decision came down adverse to your client, you could then make a proffer as to, based on your notes and your recollection, saying this is what happened, then the burden would be on the government and perhaps the IJ. You would have the benefit of saying, look, you've got to take my word because you took away my opportunity to have the verbatim. But that's what's bothering me here. There's no suggestion that there's anything specific except just a generalization. Well, this was certainly raised to the board in the notice to appeal and also in the briefing. And the board could have asked. What did you ask the board to do? We asked the board to, we stated that the record was incomplete and that Ms. Ramos has a statutory right to a complete record. And the board should have reversed and remanded for. Just per se? Yes. And to redo the whole hearing? Only the portions that were omitted from the tapes. Well, what portion, as I understand it, it was the respondent's testimony herself that was missing. Yes. So everything that the IJ says about the respondent's testimony, we shouldn't be treating as findings of fact. We should be treating it as evidence, not a finding. So we kind of look at it differently. And then it was also of the witness on the health condition of the US citizen child, right? Is there anything else? There was also the initial part of the testimony of Dr. Cramper, who is a school psychologist, as to work with this child, and all the colloquy between the parties at the beginning of the hearing regarding the failure of the IJ to enforce the subpoena to compel the in-person attendance of those witnesses, which the petitioner was relying on for that hearing. I see that my time has expired. If you had a complete transcript of those things, if you had the additional testimony and file information, how would that have altered the outcome? The board would have possibly been able to find, in the compelling testimony of any of those witnesses, reason sufficient to grant her application for cancellation or removal. Specifically based on what? What piece of evidence would it have said? Any of the evidence that described the exceptional and extremely unusual hardship that would be suffered by the US citizen children, whether it was the words of the petitioner or of the expert witnesses. Right, but I guess what I'm getting to is what additional facts about the condition of the child? One example of that is that those witnesses talking about the developmental disability of this child and her inability to use her mouth in a physical way to enable her to talk. And the immigration judge in her decision states in there that that's not a physical or mental illness. And therefore, she doesn't have a health problem. So that would be one aspect of the testimony that Mitch almost can point to and say, the board should have recognized that the testimony here indicated a severe health condition that was physical and that was grounds for finding relief from removal. And I'd like to reserve the balance of my time. I have a question. I'm trying to find some authority. You indicated your best case was what, Pullman? Is that correct? Colomar. Colomar. Colomar. OK. OK, tell me what we do with Medina. It strikes me that's a pretty strong statement. Medina did not involve a direct petition for review. Medina was a collateral attack. And Medina himself did not specify any due process violations or any statutory violations. It was really he was complaining of the fact that there was no transcript, so he couldn't go on a fishing expedition and find something wrong with his previous hearing. Well, we did respond to his statement that it was fundamentally unfair, which I take it is the same thing that's being stated here. And it strikes me as we just have to deal with that. He argues the mere absence of a tape recording or transcript of his deposition proceedings satisfies the fundamental unfairness requirement. We do not agree. We have to do something with that. You just distinguish it on what basis? On the basis that that was a collateral attack, on the basis that Mr. Medina wasn't alleging any statutory or due process violation. And here, we are also talking not only about this court's review, but the board's review of their own decision of the immigration judge. And you pointed out there's a different context. But when we state that the absence of tape is not fundamentally unfair, it's a pretty strong statement. And we have to say, oh, but that's only collateral attack. That doesn't count. Well, the court in Medina also emphasized that the absence surely affects judicial review. And the court stated that without a contemporaneous recording, the hearing lacks a key element of an adjudicatory proceedings, a means for later appellate review. And I would add to that a means for administrative review. Because here, the board was left without a complete record, which it would review de novo and could potentially affect the outcomes of these proceedings. Could I just ask a question on that same line? You suggested column R. I thought you said it justified that you don't need to show any prejudice. Did you really mean to say that, or more along the lines you're just talking about? I think more along the lines that I've just talked about. But that even if showing a prejudice were required, as in column R, Ms. Ramos could easily do that. Because it's certainly plausible that the BIA could have been influenced, had it had the opportunity to review the compelling testimony. All right. Thank you, counsel. Thank you. Good morning. Excuse me. Good morning, Your Honors. May it please the Court. Leslie McKay for the Respondent, Alberto Gonzalez. Your Honors, the record in this case is admittedly not perfect. Obviously, the tape is missing. However. Well, is it missing or was it not done? Well, there's no evidence one way or the other. So we should assume that, in fact, that the IJ didn't start the tape, or the IJs operate their own tapes, don't they, their own reports? The immigration judges do operate their own tapes. I think a couple of different scenarios are possible. Number one is equipment malfunction. As Your Honor recognized, the recording equipment at the immigration courts is hardly high tech. I believe it was purchased initially by the Social Security Administration in 1973. But that's the government's problem. It is the government's problem. And we're working on it. And typically, the equipment does function. And I'm only offering that as one possibility, that it wasn't functioning. The second possibility is that the immigration judge made some error and forgot to turn the tape on for some reason. The third possibility is that the tape was lost. However, whatever happened to the tape, the fact that it's not there, we do have a record that, number one, was reconstructed by the immigration judge in the presence of counsel for both sides almost immediately after the hearing took place. That's missing from the record, too. The tape of the telephone conversation? I don't know that there's any requirement that a conversation like that be taped. It seems as though, I mean, looking at it as a reviewing court, one would think that if you're, first of all, there's a statutory regulation that says, use the word shall. So a complete record shall be made. So we have a violation of that, for sure. And then secondly, when you have this reconstruction of the evidence, she didn't take that either. So we don't really know what exactly was said there. I don't know how we reviewed this reconstruction. And then we, really, what we have in the record is her, this, and I have to say this, this immigration judge who's been repeatedly criticized, her recollection of respondent's testimony, which she uses against her to undermine her claim. And it all, I mean, I realize all the legal rules and cases that we apply, but it does kind of seem to smack a real unfairness. Plus, I don't feel that as a reviewing court, we have a full record to look at. Well, Your Honor, if I could make a couple of points and try to respond to everything that you hit. Number one, I realize that this immigration judge has been criticized by the court. And for irregularities in procedure. For some irregularities in her proceedings. And what I would suggest to the court in this case is that there's no other indicia of inappropriate behavior on her part in the remainder of the transcript. The subpoena issue is problematic because she did agree to issue the subpoena. She issued the subpoena. And then on the day of the hearing, counsel came wanting to see the file and produce the file. And this is the critical issues, right? What is the state of the health of the younger child? So counsel comes and he's expecting to have a witness and expecting to see a file produced. And all of a sudden, he's told, taken by surprise, that, oh, no, the IJ decided that she didn't have to appear and she didn't have to produce the file. She just would be a witness over the telephone. Which seems to put the Petitioner at a disadvantage at that point, too. And it also seems somewhat irregular. I mean, one would think you would have at least had a conference with counsel or maybe tried to postpone the date or done something like that. Or required the file to be produced. Your Honor, first, I would submit that in the request for the subpoena, the Petitioner requested the presence of the witness and no documents. There was no request for particular documents, which I think is important. The documents seem to have been added onto the subpoena request by the immigration judge herself. Number two, for whatever ---- They were relevant, but then didn't require their production? Well, but it's also important to consider that in the context of the rest of the record. The Petitioner had already submitted in her pre-hearing statement a substantial volume of documents, specific evaluations related to the child that would have been called for in the subpoena. We're getting a little ---- what I'm just suggesting is that there seems to be a host of irregularities in this proceeding, some of which violate the regulations. And there was one specific thing, item, a factual item that was discussed as possibly would have affected the outcome of this hearing if we'd had that testimony from that witness. My thought is I was on a panel with a case just last month, similar situation, U.S. citizen child had autism, and the Petitioner was not able to develop the claim of autism because of the exclusion of witnesses and a poor record. But in that case, on the day of the hearing, the government came to us, along with the Petitioner, and said they wanted to mediate this case so that they could go through our Ninth Circuit mediation procedure and really put out the evidence on the table and see some other result than deportation should occur. And they're in mediation, and it's looking that they are going to reach some resolution. And I'm wondering, isn't this a case that's appropriate for that, too? Your Honor, I am familiar with that case, and I would submit to the Court that the record there was different than the record here in that, in this case, there is a volume of information in the record that was submitted by the Petitioner with specific regard to the learning disability of the child. It was very detailed. It was the exact evaluations. The testimony came in. And there was never any question, I don't think, on the part of the immigration judge about the veracity of that testimony or the completeness of that testimony. And certainly, in this case, we have a Petitioner who has never come forward, either through counsel, submitted an affidavit, and said, here is what's missing from the record. This is the critical piece. We're essentially being asked to speculate that there was some piece missing. And I don't think, on a record like this, with as much information as was put in there, and where you have counsel agreeing that the immigration judge's summary of the testimony was complete, you have a volume of documents on the specific question of the health and learning abilities of the child. I don't necessarily think that the Petitioner has shown in this case that there was some prejudice or that the record is defective in the same way as the case is. I'm asking my question about the Department of Homeland Security, would it be willing to participate in mediation on this case to see what else is there? If the Court would like for us to mediate this case, you know, yes, we would be willing to do that. However, I don't think that this is a case that's necessarily appropriate for that. The Petitioner has had an opportunity to take that bite at the apple and could have, before the Board, put in an affidavit, made a proffer of what else was missing or what else wasn't recorded or what else would have made a difference on review. And that was a done deal. On current procedures, because we've, from the bench and before, made these mediation suggestions, since DHS is the client in this case, was this something that, are you being put in a position of having to sort of react at the lectern or is there a DHS decision that they prefer not to mediate this case? You said if we order you to mediate or if we direct you to mediate, it's generally, we don't direct mediation. We invite the parties to mediate because it's consensual. So I'm just trying to understand, in this evolving interaction between DOJ and DHS and the mediation aspects of this circuit, where are you on that spectrum? I have not had any specific conversation with DHS about this case. I, based on my experience with DHS, and I have actually significant experience with the mediation program from its earliest pilot project, my sense is that they will be reluctant in this case without some proffer from, and that at minimum in mediation, we would expect the Petitioner to come forward and make a proffer. Okay. That's fair enough. Could I ask a question? I want to go to a little different subject before I move on. Sure. I don't quite understand from the record where the witness, Briars, was subpoenaed to bring some records, and all of a sudden she's testifying by telephone. It's not clear to me how that occurred. Where was some permission granted? Was a motion made? How do we get from a witness not obeying a subpoena to testifying on the telephone? I don't think that that's clear from the record at all, Your Honor. And again, I would suggest that that is an issue that Petitioner could have elucidated in an affidavit of some sort. However, it appears, and from my understanding of the record in this case, that the immigration judge agreed to permit the testimony telephonically and that the witness appeared and testified telephonically. Well, you're telling me what may happen, but I have to really rely on the record. And it seems to me that a subpoena to appear with records is a little different from picking up a telephone. Is there anything? There's nothing in the record, you say, that indicates how we got to that place. There's nothing that I could see in the record at all, Your Honor. Is there anything in the record indicating an objection from anybody based on this practice? There is nothing in the record regarding an objection from the Petitioner on that point. Your Honors, I think the critical issue in this case from the government's perspective, and I know I'm over time, so I'm going to sum up, is simply that there hasn't been any specific prejudice shown. This record is far from perfect. However, it is certainly sufficient for appellate review. It was sufficient for the Board to review. And on the basis of the record, we would request that the petition be denied. Thank you. Thank you, counsel. All right. The case of Ramos de Rojas v. Gonzalez will be submitted.
judges: Wallace, Wardlaw, Fisher